NANCY PAPPACENO *v.* PETER PICKNELLY ET AL.

MALTBIE, C. J., BROWN, JENNINGS, ELLS AND CORNELL, JS.

Argued February 3—decided August 2, 1949.

*Nathaniel Bergman,* for the appellant (plaintiff).

*Robert L. Halloran,* with whom was *Harold G. Johnson,* for the appellees (defendants).

MALTBIE, C. J. The plaintiff brought this action to recover damages for injuries claimed to have been caused by the negligence of the defendant Verrier, driver of a bus owned by the other defendant, Picknelly. The jury rendered a verdict for the defendants and the plaintiff has appealed from the denial of her motion to set it aside and from the judgment. The decisive issue presented is whether the trial court erred in refusing to set the verdict aside. No claim is made that the plaintiff was guilty of contributory negligence or that Verrier was not acting in the course of his employment by Picknelly. The question is: Could the jury reasonably have concluded that Verrier was not guilty of negligence which was the proximate cause of the injuries suffered by the plaintiff?

We must consider the evidence from the standpoint of the facts the jury could have found which go furthest to sustain the verdict. They could have concluded: The bus was proceeding southerly on Main Street in East Hartford toward its intersection with Prospect Street, following and about 100 feet behind another bus owned by the defendant Picknelly and driven by Alec Partlow. Both busses were proceeding at a speed of twenty-five to twenty-eight miles an hour. As the Partlow bus approached the intersection, a traffic light suspended over it turned red and the driver

brought the bus to a more abrupt stop than was usual. At the northwest corner of the intersection was a service station with a driveway leading into it from the west side of Main Street. The Partlow bus came to a stop with its front about opposite the northerly line of the driveway and sufficiently away from the west curb of the street so that vehicles proceeding southerly could drive between it and the curb. A car had come to a stop on the northerly line of the intersection, ahead of and somewhat to the right of the bus. While there was room for Verrier to pass to the right of the Partlow bus, his way was blocked by this car. Accordingly, he slowly applied his brakes and turned the bus into the driveway to the service station, proceeding at a speed of not over ten miles an hour.

The plaintiff testified that she was standing upon the sidewalk on the west side of Main Street southerly of the driveway but very near its southerly line and near an iron light pole; and the defendants' witness Partlow corroborated that testimony. While she testified that she was struck by the bus, there was testimony to the contrary which the jury might have believed; the testimony of both Partlow and Verrier as witnesses for the defendants was to the effect that the bus passed close to her. Partlow also testified that she "jumped back against the pole." Verrier further testified: "I saw this woman standing there and she saw the great big bus coming towards her and I could see her eyes open up big, that she was scared. . . ." There was no other evidence relevant to these matters. The witnesses for the plaintiff and the defendants agreed that the plaintiff was scared by the bus coming towards her and as a result came into violent contact with the pole. A jury is not at liberty to disregard evidence unless they can reasonably conclude that it is not to be credited. *Roma* v. *Thames River Specialties Co.,* 90

Conn. 18, 20, 96 A. 169; *Baril* v. *New York, N. H. & H. R. Co.,* 90 Conn. 74, 76, 96 A. 164; *Dudas* v. *Ward Baking Co.,* 104 Conn. 516, 133 A. 591. In *Levy* v. *Bromberg,* 108 Conn. 202, 142 A. 836, acting upon this principle, we reversed a ruling of the trial court refusing to set a verdict aside. In the present case the jury could not have reasonably refused to believe that the circumstances were those as to which witnesses for both the plaintiff and defendants agreed, or reached any conclusion other than that the bus, if it did not hit the plaintiff, passed so close to her as to scare her, with the result that she jumped back and came into violent contact with the iron pole.

Had the evidence gone no further, it might have been a question of fact for the jury whether Verrier should have reasonably foreseen that the course taken by the bus would so frighten the plaintiff as to cause her to come into violent contact with the iron pole behind her. *Orlo* v. *Connecticut Co.,* 128 Conn. 231, 237, 21 A. 2d 402. Verrier testified, however, that his bus was equipped with two sets of brakes, an emergency brake, which was used to hold the bus when it had stopped, and air brakes. For the purpose of bringing his bus to the stop necessary at the intersection, he relied upon the latter. It is characteristic of such brakes that if they are applied too quickly they will either lock the wheels or fail to exert any braking power whatsoever. Verrier testified that the brakes on the bus were "bad" and went on to explain that they were "too quick," that is, at the least touch of them "they'd tighten right up." He further testified: When the bus ahead of him stopped, he found himself getting closer to it but did not want to apply his brakes too quickly lest he throw his passengers forward, and so he put them on slowly; when he had "about an inch left before [the] brakes would be to the end of their

destination" and felt himself approaching the other bus, he did not want to "take a chance of pressing them any further, chancing rather with probably having a rear end collision with the coach ahead of me"; he had plenty of room to stop or go ahead, but he was not sure of his stop and so he turned into the filling station. Verrier at any time might have needed to bring his bus to a stop in a way that, on the one hand, would not subject his passengers to injury by too sudden a stop or, on the other, would avoid a collision with vehicles ahead of him. Section 606c of the 1935 Cumulative Supplement to the General Statutes (Rev. 1949, § 2428), in effect when the accident occurred, provided that every motor vehicle operated upon a public highway should be "equipped with brakes adequate to safely control the movement of such vehicle" and that the brakes should "at all times be maintained in good and sufficient working order." The jury could not reasonably have concluded that the operation of the bus with the brakes in the condition Verrier stated them to be was not a violation of the statute and did not constitute negligence.

It was not disputed that the bus had a gross weight of 22,500 pounds and was about 28 feet long and 7 feet wide, that it had a capacity of 37 passengers and that at least it passed very close to the plaintiff as she was standing on the sidewalk. The course the bus must have taken was such that as it turned it would be headed at one time almost directly towards her. Upon the evidence, the fright caused the plaintiff was a natural consequence of that course. No other conclusion was reasonably possible than that the negligence in operating the bus with defective brakes was the reason its driver proceeded as he did, and that this negligence was a substantial factor in causing the fright of the plaintiff and the injuries she suffered. See *Edgecomb*

v. *Great Atlantic & Pacific Tea Co.*, 127 Conn. 488, 491, 18 A. 2d 364; *Vignone* v. *Pierce & Norton Co.*, 130 Conn. 309, 317, 33 A. 2d 427.

The trial court erred in refusing to set the verdict aside. The errors claimed in the appeal from the judgment present situations unlikely to occur on a retrial and no purpose would be served in discussing them. We note, however, that while a number of rulings on evidence are assigned as error the only reference to them in the plaintiff's brief is a single general statement in which they are all grouped together, and it is stated that the court erred in rejecting material testimony and in admitting improper testimony; and we comment that this treatment of them in the brief would not in any event impose a duty upon us to consider them. *Marra* v. *Kaufman*, 134 Conn. 522, 529, 58 A. 2d 736.

Of the more than 120 pages of testimony printed in the record, something more than one-third consists of evidence relevant only to the issue of damages; a small part of this testimony might have been material in connection with assignments of error in the action of the trial court in finding that the defendants had offered evidence to prove certain facts material to claimed errors in the charge, but most of it is irrelevant to any issue presented on the appeal. Printing it has imposed upon the court and its officers a burden that should have been spared them.

There is error, the judgment is set aside and the case is remanded with direction to grant the motion to set the verdict aside.

In this opinion BROWN and CORNELL, Js. concurred.

JENNINGS, J. (dissenting). The trial court is ordered to set aside the defendants' verdict on the ground that it is against the evidence. I submit that this is a

rare occurrence. This is not due to any special consideration for defendants but because the jury may disbelieve any witness, leaving the plaintiff without the necessary preponderance of the evidence.

Of the six cases cited in the majority opinion to support the proposition that the verdict should have been set aside, five were plaintiffs' verdicts and in the sixth, *Levy* v. *Bromberg,* 108 Conn. 202, 204, 142 A. 836, "manifest fraud" was apparent. In spite of the analysis of the testimony made in the majority opinion, I am satisfied that the jury reasonably could have found for the defendants. They might at least have found that the driver had no reason to believe that the course he took, usual for cars entering the gasoline station, would cause the plaintiff any appreciable fright. *Orlo* v. *Connecticut Co.,* 128 Conn. 231, 237, 21 A. 2d 402. In that case his negligence, if any, would not be a substantial factor in causing the injury. The accident occurred in 1944 and I think the verdict should stand.

In this opinion ELLS, J., concurred.